JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOHN MAHONEY, on behalf of himself and all others similarly situated

**DEFENDANTS**

STADIUM CASINO RE, LLC.

**(b)** County of Residence of First Listed Plaintiff ___Bucks County___
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

David Glanzberg, Esq, Robert Tobia, Esq. 123 S. Broad St., Ste 1640, Phila, PA 19109, 215-981-5400

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 446 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Tital III of the Americans with Disabilities Act

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
04/19/2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ David S. Glanzberg

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF**
**PENNSYLVANIA**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JOHN MAHONEY, on behalf of himself and all    Case No.:
others similarly situated,

Plaintiffs, v.

STADIUM CASINO RE, LLC
900 PACKER AVENUE
PHILADELPIA PA 19148

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATIVE RELIEF** |

## INTRODUCTION

1.    Plaintiff JOHN MAHONEY ("Plaintiff" or "MAHONEY"), on behalf of himself
and others similarly situated, asserts the following claims against Defendant
known as **STADIUM CASINO RE, LLC,** operating as **LIVE ! CASINO AND
HOTEL PHILADELPHIA** (henceforth known as **LIVE**) as follows.

2.    Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in
the United States are visually impaired, including 2.1 million who are blind, and
according to the American Foundation for the Blind's 2016 report, approximately
300,000 visually impaired persons live in the State of Pennsylvania.

3.    "Being unable to access website puts individuals at a great disadvantage in today's
society, which is driven by a dynamic electronic marketplace and unprecedented
access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the

Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013).

4.  Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

5.  Plaintiff requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

6.  Plaintiff brings this civil rights action against Defendant to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("Title Ill"), which requires, among other things, that an owner and operator of a place of public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services-including electronic services for use with a computer screen reading program-where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

7.  By failing to make its Website available in a manner compatible with computer

screen reader programs, **LIVE**, a private entity (as that term is defined in 42 USCS § 12181(6)) who owns and operates places of public accommodation subject to Title III), deprives blind and visually-impaired individuals the benefits of its goods, services, facilities, privileges, advantages, or accommodations of its places of public accommodation-all benefits it affords nondisabled individuals- thereby increasing the sense of isolation and stigma among these Americans that Title ill was meant to redress.

8.  Upon information and belief, because **LIVE**.'s website WWW.PHILADELPHIA.LIVECASINOHOTEL.COM (the "Website"), which provides information necessary to access its places of public accommodation, has never been accessible and because **LIVE** does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

    a.  that **LIVE** retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so the information necessary to access the goods and services offered at its places of public accommodation may be equally accessed and enjoyed by individuals with vision related disabilities;

    b.  that **LIVE** work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis, including onsite training to create accessible content at the design and

development stages;

c.  that **LIVE** work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether **LIVE**'s Website, and thereby its place of public accommodation, may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d.  that **LIVE** work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether **LIVE**'s Website, and thereby its places of public accommodation, may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

e.  that **LIVE** work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and tollfree phone number to report accessibility-related problems; and

f.  that Plaintiff, their counsel and its experts monitor Defendant's Website for up to two years after the Mutually Agreed Upon Consultant validates it is free of accessibility errors/violations to ensure **LIVE** has adopted and implemented adequate accessibility policies.

9.  Web-based technologies have features and content that are modified on a daily, and in some instances, an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a

periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

11. **LIVE** purposefully targets and otherwise solicits business from Pennsylvania residents through its Website, and otherwise frequently conducts business with Pennsylvania residents.

12. Venue in this District is proper under 28 U.S.C. § 139l(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff claims occurred.

13. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

14. Plaintiff, at all relevant times, is and was a resident of Bucks County, Pennsylvania.

15. Defendant is and was at all relevant times a **Delaware** Corporation doing business in Pennsylvania, including its business location of 900 Packer Avenue, Philadelphia PA 19148 and its branch corporate location of STADIUM CASINO RE, LLC at 900 Packer Ave, Philadelphia, PA 19148 and several other locations throughout the state of PA.

16.   Defendant owns and operates several businesses in the State of Pennsylvania (the: "Physical Locations") that are places of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7), as the Physical Locations are classified as, without limitation, as a Hotel, and Casino, along with similar services. The services that Defendant offers at the Physical Locations are unique to the Physical Locations.

## NATURE OF ACTION

17.   The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning. banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

18.   In today's tech-savvy world, blind and visually impaired people have the ability to access website using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-rea ding software. Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet. Unless websites are designed to be read by screen- reading software, blind and visually-impaired persons are unable to fully access the website, and the information, products, and goods offered thereon.

19.   Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen reading software programs available to

them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen- reading software program available for a Windows computer. Another popular screen- reading software program is NonVisual Desktop Access "NVDA." Plaintiff uses the former.

20.   For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the visually-impaired user is unable to access the same content available to sighted users.

21.   The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making website accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their website are accessible.

22.   Non-compliant website poses common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

    a.   A text equivalent for every non-text element is not provided;

-7-

b.    Title frames with text are not provided for identification and navigation;

c.    Equivalent text is not provided when using scripts;

d.    Forms with the same information and functionality as for sightedpersons are not provided;

e.    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.    Text cannot be resized without assistive technology up to 200%without losing content or functionality;

g.    If the content enforces a time limit, the user is not able to extend,adjust or disable it;

h.    Web pages do not have titles that describe the topic or purpose;

I.    The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

J.    One or more keyboard operable user interface lacks a mode ofoperation where the keyboard focus indicator is discernible;

k.    The default human language of each web page cannot beprogrammatically determined;

l.    When a component receives focus, it may initiate a change

in context;

m.    Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component.

n.    Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.    In content, which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.    Inaccessible Portable Document Format (PDFs); and,

q.    The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

23.    Defendant is a Casino and Hotel that owns and operates physical locations offering Casino and Gaming and Hotel services and related services, including the Physical Locations. Defendant also owns and operates the Website.

24.    Defendant uses the Physical Locations to offer numerous services to the public,

including, without limitation, Casino, Gaming and Hotel Services and related services,

25. Defendant 's Website offers information to consumers throughout the United States, including Pennsylvania. Such information (the "Information") includes, without limitation, information necessary to access and visit the Physical Locations, such as, without limitation, the phone number to the Physical Location, directions to and operating hours of the Physical Location, and information regarding the various offerings of and events scheduled to be held at the Physical Locations.

26. Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient JAWS and/or NVDA screen-reader user and uses it to access the Internet.

27. Plaintiff has attempted to use Defendant's Website at least once in the past in order to access the Information and services presented thereon in order to access and visit the Physical Locations. Unfortunately, because of **LIVE**'s failure to build its Website in a manner that is compatible with screen reader programs, Plaintiff is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use. For example:

  a. Many features on the Website lacks alt. text, which is the invisible code embedded beneath a graphical image. As a result, Plaintiff was unable to differentiate what products were

-10-

on the screen due to the failure of the Website to adequately describe its content.

b. Many features on the Website also fail to Add a label element or title attribute for each field. This is a problem for the visually impaired because the screen reader fails to communicate the purpose of the page element. It also leads to the user not being able to understand what he or she is expected to insert into the subject field.

c. The Website also contains a host of broken links, which is a hyperlink to a non- existent or empty webpage. For the visually impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered.

28. As a result of visiting **LIVE**'s Website and from investigations performed on his behalf, Plaintiff is aware the Website includes at least the following additional barriers blocking his full and equal use:

a. The Website does not provide a text equivalent for every non-text element;

b. The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

c.  Web pages lack titles that describe their topic or purpose;

d.  Headings and labels do not describe topic or purpose;

e.  Keyboard user interfaces lack a mode of operation where the keyboard focusindicator is visible;

f.  The default human language of each web page cannot be programmaticallydetermined;

g.  The human language of each passage or phrase in the content cannot be programmatically determined;

h.  Labels or instructions are not always provided when content requires user input;

i.  Text cannot be resized up to 200 percent without assistive technology so that itmay still be viewed without loss of content or functionality;

J.  A mechanism is not always available to bypass blocks of content that are repeated on multiple web pages;

k.  A correct reading sequence is not provided on pages where the sequence in which content is presented affects its meaning;

l.  In content implemented using markup languages, elements do not always have complete start and end tags, are not nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

m.  The name and role of all UI elements cannot be programmatically

determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

29.  These barriers, and others, deny Plaintiff full and equal access to the Information and content the Website offers related to the Physical Locations, and now deter him from attempting to use the Website and/or visit the Physical Locations. Still, Plaintiff would like to, and intends to, access the Website to gather the Information and access the content and services presented thereon in order to visit one or both of the Physical Locations as soon as the Website is made accessible to the visually impaired, or to test the Website for compliance with the ADA.

30.  Plaintiff intends to access the Website in order to gather the Information for purposes of accessing the services that Defendant offers to the public by way of the Physical Locations. Plaintiff intends to do so, and to visit the one or both of the Physical Locations to take advantage of the services and products offered there, as soon as the Website is made accessible to the visually impaired.

31.  Due to Defendant's failure and refusal to remove access barriers to its Website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's Website and the Physical Locations, and the numerous goods and services and benefits offered to the public through the Physical Locations.

32.  If the Website were accessible, i.e. if **LIVE** removed the access barriers described above, Plaintiff could independently research the Website's Information, content and

services presented thereon related to the Physical Locations.

33.    Through his attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make the Information, content and services presented thereon inaccessible and independently unusable by blind and visually-impaired people.

34.    Though **LIVE** may have centralized policies regarding the maintenance and operation of its Website, upon and information and belief, **LIVE** has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

35.    The Law requires that **LIVE** reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be earned out without much difficulty or expense.

36.    Plaintiff's above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of website complies with the international compliance standard known as Web Content Accessibility Guidelines version

2.1 AA ("WCAG 2.1 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C").

37.    Plaintiff and the Class (as defined below) have been, and in the absence of an

injunction will continue to be, injured by **LIVE**'s failure to provide its online content and services related to its places of public accommodation in a manner that is compatible with screen reader technology.

38.  **LIVE** has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

39.  Indeed, the Disability Rights Section of the DOJ reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts that it has been a "longstanding position" of the Department of Justice "that the ADA applies to website of

public accommodations." See *National Association of the Deaf. Massachusetts Institute*

*of Technology,* No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); see also *National Association of the Deaf v. Harvard University,* No. 3: 1 5-cv -30023 - MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

40.  The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. Inrelevant part, the ADA requires:

> In the case of violations of ... this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities ... Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .42 U.S.C. § 12188(a)(2).

41. There is no DOJ administrative proceeding that could provide Plaintiff with Title Ill injunctive relief.

42. While DOJ has rulemaking authority and can bring enforcement actions in court; Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

43. Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of matters.

44. Resolution of Plaintiffs claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, e.g. (a) whether **LIVE** offers content necessary to access it and services on its' Website and places of public accommodation, and (b) whether Plaintiff can access such content and services.

45. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website and the content and services presented thereon necessary to access its places of

-16-

public accommodation, violating their rights.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class (the "Class") under Fed. R. Civ. P. 23(a) and 23(b)(2) consisting of all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of the goods and services offered at its places of public accommodation, during the relevant statutory period.

47.    Common questions of law and fact exist amongst the Class, including:

   a.    Whether the Physical Locations are a "public accommodation" under the ADA;

   b.    Whether, by providing content and services related to the Physical locations including, without limitation, the Information, Defendant's Website bears a sufficient "nexus" to the Physical Locations;

   c.    Whether, through Defendant's Website, Defendant denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA.

48.    Plaintiff's claims are typical of the Class. The Class, like Plaintiff, are visually impaired or otherwise blind, and claim that Defendant has

violated the ADA by failing to remove access barriers on its Website so as to be independently accessible to the Class.

49.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class (the "Class Members") because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members.

50.     Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole.

51.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

52.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits throughout the United States.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 et seq.

53.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges

everyallegation of the preceding paragraphs as if fully set forth herein.

54.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

55.     The Physical Locations, owned and operated by Defendant, are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7..

56.     The Website bears a direct nexus to the Physical Location, as it offers content, services and information (including, without limitation, the Information) to the general public necessary to access the Physical Locations, and as such, must be equally accessible to all potential consumers.

57.     By failing to make the Website equally accessible to all potential consumers (including members of the general public that are visually impaired), Defendant has prevented Plaintiff from availing himself of the goods and services that Defendant offers at the Physical Location.

58.     Had Plaintiff been able to access the content, services and information (including, without limitation, the Information) offered on the Website, Plaintiff would have availed himself of the goods and services that Defendant offers at the Physical Location.

59.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to

deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

60.  Under Section 302(b)(l) of Title ill of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(l)(A)(ii).

61.    .    Under Section 302(b)(2) of Title ill of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii.)

62.  The acts alleged herein constitute violations of Title ID of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §

12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website and Defendant's places of public accommodation, has not been provided services that are provided to other patrons who are not disabled, and has not been provided any reasonable accommodation to those services. Defendant has failed to take any prompt and equitable steps to remedy its discriminatoryconduct. These violations are ongoing.

63. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION
## DECLARATORY RELIEF

64. Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

65. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its places of public accommodation, which Defendant owns, operations and controls, and therefore fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.* prohibitingdiscrimination against the blind.

66. A judicial declaration is necessary and appropriate at this time in order that each

-21-

of theparties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

67.     A Declaratory Judgment that at the commencement of this action **LIVE** was in violation of the specific requirements of Title ill of the ADA described above, and the relevant implementing regulations of the ADA, in that **LIVE** took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

68.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which

directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements related to and set forth in the ADA, and its implementing regulations, so that its Website and its places of public accommodation is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant bas adopted andis following an institutional policy that will in fact cause it to remain fully in compliance with the law- the specific injunctive relief requested by Plaintiff is described more fully in paragraph 8 above;

69.     An award of costs and expenses of this action;

70.     Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the

judgment (see *Hadix v. Johnson,* 143 F.3d 246 (6th Cir. 1998), affd in part, rev'd in part, 527 U.S. 343 (1999); *Jenkins v. Missouri,* 127 F.3d 709 (8th Cir. 1997); *Walker v. US. Dep't of Hous. & Urban Dev.,* 99 F.3d 761 (5th Cir. 1996); *Stewart v. Gates,* 987 F.2d 1450, 1452 (9th Cir. 1993) (district court should permit compensation for the post judgment monitoring efforts by the plaintiff's counsel that are "useful and necessary to ensure compliance with the court's orders"); *Garrity v. Sununu,* 752 F.2d 727, 738-39 Ost Cir. 1984); *Adams v. Mathis,* 752 F.2d 553 (11th Cir. 1985); *Willie M. v. Hunt,* 732 F.2d 383, 385, 387 (4th Cir.

1984); *Bond v. Stanton,* 630 F.2d 1231, 1233-34 (7th Cir. 1980); *Northcross* 1. *Board of Educ.,* 611 F.2d 624, 637 (6th Cir. 1979) ("Services devoted to reasonable monitoring of the court's decrees, both to ensure full compliance and to ensure that the plan is indeed working.. .are essential to the long-term success of the plaintiffs suit.") (citing 3rd Circuit's support for District Court' s award of prospective fees to plaintiffs counsel);

71. An order certifying the Class under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel; and

72. Such other and further relief as this Court deems just and proper.

Dated:       04/01/2022

Philadelphia, Pennsylvania

GLANZBERG TOBIA LAW, P.C.

By: *David S. Glanzberg*
David S. Glanzberg,
Esq.
david.glanzberg@gtlaw
pc.com
123 South Broad Street, Suite 1640
Philadelphia, PA 19109
Tel: (215) 981-5400
Fax: (267) 319-1993

ATTORNEYS FOR PLAINTIFF

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| **JOHN MAHONEY,** on behalf of himself and all others similarly situated | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **STADIUM CASINO RE, LLC.** | : | **NO.** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)    Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. (  )

(b)    Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. (  )

(c)    Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. (  )

(d)    Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. (  )

(e)   Special Management – Cases that do not fall into tracks (a) through (d) that are

commonly referred to as complex and that need special or intense management by the court.

(See reverse side of this form for a detailed explanation of special management cases.)   (  )

**(f)** Standard Management – Cases that do not fall into any one of the other tracks.   (✓ )

Date 04/12/22

DAVID S. GLANZBERG, ESQ.
Attorney for JOHN MAHONEY

Telephone 215-981-5400          FAX Number 267-319-1993
E-Mail Address          DAVID.GLANZBERG@GTLAWPC.COM

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 7203 Centennial Station, Warminater, PA 18974 _____

Address of Defendant: _____ 900 Packer Avenue, Philadelphia, PA 19148 _____

Place of Accident, Incident or Transaction: _____ Bucks County _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/19/2022   *Attorney-at-Law / Pro Se Plaintiff*   50820
*Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
*(Please specify):* ____ Americans with Disabilities Act (446) ____

**B.**  *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ David S. Glanzberg _____, counsel of record *or pro se plaintiff*, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 04/19/2022   *Attorney-at-Law / Pro Se Plaintiff*   50820
*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)